## HOME INS. CO. OF NEW YORK v. HIGHTOWER et al.

Circuit Court of Appeals, Fifth Circuit.
December 9, 1927.

Rehearing Denied January 7, 1928.

No. 5079.

1. **Insurance ⬳665(1)—Evidence held to support verdict for insured on floating fire policy covering cotton in transit or stored in warehouses.**

In suit on floating insurance policy, intended to cover all cotton in bales owned by insured, whether in transit to or from warehouses or stored therein, evidence *held* sufficient to support verdict for plaintiffs, in absence of breaches of warranties voiding policy.

2. **Insurance ⬳388(3), 392(1)—Breach of requirement of floating fire policy for daily reports is waived, if insurer accepts reports and premiums with knowledge of breach.**

In case insurer had knowledge daily reports required of insured under floating fire insurance policy were not being made as required by policy, and accepted such reports as were made, and accepted premiums on policy, breach of such provision was waived.

3. **Insurance ⬳335(1)—Insured, under floating fire policy requiring keeping of records, need only use due care in keeping thereof.**

Insured, under floating fire insurance policy requiring records and copies of reports to be

safely and securely kept, has duty only of using due care in keeping them safely, and to produce them if they are in existence after fire, and was not obligated to keep records safely and to produce them at all events.

**4. Insurance ☞335(1)—Insured's failure to produce reports required by floating fire policy held not breach of condition, when destroyed without intent or negligence.**

Failure of insured to produce reports required under floating fire policy *held* not to constitute a breach of such condition of policy, where material part of records was destroyed without intent or negligence on part of insured.

**5. Insurance ☞388(3)—Breach of warranty may be waived by insurer's conduct after knowledge of breach.**

Breaches of warranties contained in floating fire policy may be waived after loss by conduct of insurer with knowledge of breach.

**6. Insurance ☞376(2)—Provisions of waiver clause have no application to waiver after loss.**

Provision of policy to effect that conditions thereof cannot be waived have no application to waiver after loss.

In Error to the District Court of the United States for the Northern District of Alabama; William I. Grubb, Judge.

Suit by Lakin C. Hightower and Winston S. Garth, partners doing business under the name and style of Hightower & Garth, against the Home Insurance Company of New York. Judgment for plaintiffs, and defendant brings error. Affirmed.

C. M. Smithdeal and W. H. Shock, both of Dallas, Tex. (Fred Wall, of Athens, Ala., Douglass Taylor, of Huntsville, Ala., and Smithdeal, Shock, Spence & Bowyer, of Dallas, Tex., on the brief), for plaintiff in error.

W. W. Callahan and A. J. Harris, both of Decatur, Ala., J. G. Rankin, of Athens, Ala., for defendants in error.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

FOSTER, Circuit Judge. This is a writ of error to reverse a judgment of $136,773.06, entered on a verdict in favor of defendants in error, plaintiffs below. Error is assigned to the overruling of a motion to direct a verdict in favor of plaintiff in error, defendant below, at the close of the evidence, to certain parts of the general charge given, and to the refusal of various requests for special charges. These assignments present all the material issues and may be considered together. The parties will hereafter be referred to as they appeared in the district court.

Defendant issued to plaintiffs what is known as a floating fire insurance policy, intended to cover all cotton in bales owned by the insured anywhere in the United States or Canada, whether in transit to or from plaintiffs' warehouses or stored therein, up to an amount of loss not exceeding $300,000 in any one fire, provided title was still in the insured. The rate of premium was not stated in the policy, but was fixed by a separate agreement. The policy provided that the premiums should become due and payable on or before the 15th day of the month first succeeding that in which they accrued, and that premiums should be paid on the market value of the cotton, and whether such cotton had been destroyed or damaged or not. The policy contained the following stipulations, material to this case.

"Warranted by assured:

"To report to this company, within 24 hours after this policy becomes effective, all cotton covered by this policy, and thereafter to report daily (Sundays and holidays excepted) all purchases, sales, balements, and shipments of cotton by assured, including cotton consigned by or to assured under bills of lading, and the value of each lot so reported.

"To keep an accurate record of all purchases, sales, balements, and shipments, showing, among other things the weight, class, marks, location, and date of removal from any storage point or place to another.

"That all such records and copies of all reports required of assured hereunder shall be safely and securely kept, and shall be open to the inspection of any authorized representative of this company at any time, upon request."

"Warranted by the assured to give to this company immediate notice of all losses as soon as the assured has information thereof. This company may investigate the circumstances attending any loss or damage and ascertain the amount, without admitting liability under this policy, and without waiving its right to deny liability.

"The maximum amount for which this company shall be liable on account of any one fire or conflagration is $300,000.

"In case any cotton covered by this policy shall be damaged or destroyed, the assured warrants that he will produce the records which he is required to keep by the terms of section 9 hereof, and that his failure to produce such records and permit this company to examine the same shall render this policy null and void as to any such loss."

"*Fraud, Misrepresentation, etc.*—This entire policy shall be void if the insured has concealed or misrepresented any material fact or circumstances concerning this insurance or the subject thereof, or in case of any fraud

or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss."

"*Waiver.*—No one shall have power to waive any provision or condition of this policy, except such as by the terms of this policy may be the subject of agreement added hereto, nor shall any such provision or condition be held to be waived unless such waiver shall be in writing added hereto, nor shall any provision or condition of this policy or any forfeiture be held to be waived by any requirement, act or proceeding on the part of this company relating to appraisal or to any examination herein provided for; nor shall any privilege or permission affecting the insurance hereunder exist or be claimed by the insured unless granted herein or by rider added hereto."

On January 31, 1926, a fire destroyed the Pope warehouse, at Athens, Ala., owned by plaintiffs. They claimed a loss of 2,500 bales of cotton, valued at $230,212, and promptly notified defendant. Shortly thereafter defendant advanced $100,000 on the loss without prejudice to a final settlement. Defendant finally declined to pay, and suit was brought on the policy.

Defendant contends that not more than 1,000 bales of cotton were destroyed, and of this plaintiffs did not have title to 95 bales; that plaintiffs had breached the warranties of the policy by failing to make daily reports, and by not keeping safely and producing necessary records; and that plaintiffs were guilty of fraud in obtaining the advance of $100,000 by falsely pretending that 2,500 bales of cotton had been destroyed. Defendant also relies on the nonwaiver clause of the policy above quoted.

Plaintiffs set up waiver and estoppel, and say it was agreed that daily reports need not be made, and with knowledge that they were not being made defendant accepted premiums before the fire, and after the fire accepted premiums and reports; that they produced and turned over to defendant's adjuster all the records they had, and advised him of what records had been destroyed, and after an investigation he accepted a proof of loss for 2,500 bales and authorized the advance of $100,000; that the adjuster took charge of and disposed of what salvage there was and defendant retained the proceeds; that an extensive audit of their books and records was made by an accountant representing defendant after the adjuster had made his report, and in this they assisted, and were put to expense in doing so; that payment was not declined until some weeks after this.

[1] As to the methods of doing business and keeping the books, there was evidence before the jury tending to show substantially this: Plaintiffs kept a stock book at their uptown office, wherein was entered in detail all the cotton received by them and stored in the Pope warehouse, as well as other warehouses. Each bale was given a number, and the stock book showed this number, the weight of the bale, and the grade of the cotton. The disposal of the cotton was shown on the stock book by a pencil check mark opposite the bale. The stock book showed that certain bales had been sold more than once, and also showed duplications of numbers of other bales. There was testimony to explain the apparent inaccuracies of the stock book as follows:

In the Pope warehouse a large part of the cotton was in stacks, and it was sometimes difficult to get at it and remove particular bales. Each bale had a tag showing the number given it, the weight of the bale, and the grade of the cotton, corresponding to the entries in the stock book. Samples of the cotton were kept in the uptown office. Cotton was sold by these samples, and when shipment was made a clerk would go to the warehouse and endeavor to have the cotton corresponding to the samples gotten out. If one of the bales sold was difficult to get out of the stack, another bale in a more convenient location, of the same grade and approximate weight, was selected and tagged to correspond to the bale in the stack, and its tag was transferred to the stacked bale. Sometimes, through mistake or neglect, this was not done, and there were other duplications of numbers of tags caused in the usual course of business by using different colored tags having duplicate numbers.

Plaintiffs produced the stock book, the purchase invoices of all the cotton and warehouse tickets purporting to show the amount of cotton received in the warehouse. When cotton was sold, a duplicate invoice of the sale was filed in the office of the warehouse, a separate building some ten feet from the warehouse proper. The fire which destroyed the warehouse was slow in development, but the duplicate invoices were not removed from the office and were destroyed by the fire, which ultimately consumed the office.

It is unnecessary to set out a summary of the other evidence. It is sufficient to say that there was evidence before the jury tending to show that the warehouse actually contained 2,500 bales of cotton when destroyed, and that the stock book substantially truthfully reflected the amount, weights, and

grades of this cotton, and that plaintiffs had title. There was also evidence tending to show the doing of the acts relied upon by plaintiffs as waivers of breaches of the conditions of the policy. In the light most favorable to defendant, it may be said the testimony regarding the number of bales destroyed in the warehouse was in slight conflict, or was of such character as to permit reasonable men to draw different deductions from it; but there was sufficient to support the verdict, if there were no breaches of warranties voiding the policy, or if these had been waived.

The charge of the court fully covered the facts of the case and called attention to the respective contentions of both plaintiffs and defendant. In substance the court charged the jury that the burden was on plaintiffs to show that all the cotton claimed to be destroyed was actually in the warehouse at the time of the fire, and that they had title to it; that the jury must determine whether the records produced were sufficient, and, if not, whether, together with those destroyed, they were sufficient, and whether the records were safely kept, as required by the policy; that under the policy the insured did not guarantee that the records would be safely kept under any circumstances, but that "safely and securely kept" meant that they should be kept in such way that a prudent man in the cotton business in like circumstances would keep his records.

On the question of waiver the jury was charged that if, with knowledge on the part of defendant that daily reports were not made, it elected to keep the policy in force and to collect premiums, that would amount to a waiver of that condition; that if, after knowledge of the breaches of the clauses of the policy relative to the making of reports, keeping proper records in a safe place, and producing them, they elected to keep the policy in force with the purpose of adjusting it, and put the plaintiffs to trouble and expense, with the idea that they were not going to take advantage of the right they had to cancel the policy, that would amount to a waiver; but that there could be no waiver without prior knowledge of the breach.

[2] It is impossible to tell on what ground the jury rested the verdict, but it is apparent from the above-stated facts and the charge given that the jury was at liberty to find that title to all the cotton was in plaintiffs, and that the amount actually claimed was in the warehouse and destroyed, and, having so found, that plaintiffs were not guilty of fraud in procuring the advance of $100,000. They were also at liberty to find that the records

produced were sufficient, if they were satisfied of the accuracy of the stock book, and in the alternative that they were sufficient in connection with the duplicate invoices destroyed. There could be no question that if, with knowledge that daily reports were not being made as required by the policy, defendant accepted such reports as were made and accepted premiums on the policy, that breach would be waived. Of course, it was also within the province of the jury to determine whether the other acts of defendant relied on as waivers were sufficient to indicate the intention of keeping the policy in force and to adjust the loss.

[3, 4] It is argued on behalf of defendant that the warranty clauses of the policy in suit are equivalent to, but stronger than, the iron safe clause in standard fire policies. There is an analogy, but the clauses in the policy in suit are not more stringent and entitled to greater effect. The duty imposed on plaintiffs was a reasonable compliance with the warranty. This implies they should keep the books and records usual to the business, to use due care in keeping them safely, and to produce them if they were in existence after the fire. Plaintiffs were not obligated to keep the books and records safely absolutely, and to produce them at all events. If they acted in good faith, and with the care that prudent men ought to exercise under like circumstances, it was sufficient. If they so acted, and any material part of the records was destroyed without intent or negligence on their part, the failure to produce them would not constitute a breach of that condition of the policy. Liverpool, etc., Ins. Co. v. Kearney, 180 U. S. 132, 21 S. Ct. 326, 45 L. Ed. 460.

[5, 6] Without attempting to cite the numerous decisions, we think it is well settled by the weight of authority that breaches of warranties contained in the policy may be waived after loss by conduct of the insurer such as is here shown, with knowledge of the breach (14 R. C. L. par. 359); and also that a provision similar to the above quoted waiver clause has no application to waiver after loss (Twin Cities Fire Insurance Co. v. Stockmen's National Bank [C. C. A.] 261 F. 470, and authorities therein cited).

This disposes of the errors assigned to the overruling of the motion to direct a verdict and to the charge of the court as given. There are other errors assigned, but they require no discussion, and are also without merit.

The record shows no reversible error.

Affirmed.