12547

GEORGE WASHINGTON FIRE INS. CO. v. ADAMS

(145 S. E., 15)

*Messrs. Jas. H. Fowles,* and *John D. Nock,* for appellant,

*Mr. Geo. K. Laney,* for respondent.

December 19, 1928.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

The defendant, Adams, in 1921, owned and conducted a mercantile business in the town of Chesterfield, known as the Adams Cash Market. On April 12, of that year, the plaintiff issued to him a fire insurance policy covering his stock of merchandise and store fixtures, in the sum of $3,000. It is undisputed that the policy contained the following provision: "unless otherwise provided by agreement in writing added hereto this company shall not be liable for loss or damage occurring. Other insurance. (a) While the insured shall have any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy."

On October 21, 1921, the defendant obtained additional insurance on the same property in three other insurance companies, in sums aggregating $4,500. The stock of goods and fixtures, on December 20, 1921, were totally destroyed by fire, and, proof of loss having been made, as required by the rules of the company, the plaintiff paid to the defendant, in settlement of his claim, the sum of $2,824.27. Subsequently this action was brought for the purpose of recovering back·from defendant the amount paid him, with interest from date of payment.

The plaintiff alleged, as the basis of its action, that it paid the insurance to the defendant under a false and fraudulent representation made·by him, that there was no other insurance on the property; and ·alleged further that when the defendant made these representations to the plaintiff he knew them to be false. The defendant, answering, admitted the receipt of the insurance money, but alleged that the plaintiff knew at the time it was paid that there was other insurance on the property and "thereby waived any rights it may have had in reference to other insurance."

The case was tried in the Court of Common Pleas for Chesterfield County, before Hon. Charles Carroll Simms,

special Judge, and a jury. At the close of the testimony, the plaintiff made a motion for a directed verdict, on the ground that there was no evidence that the plaintiff, before it paid the defendant the insurance money, had any notice whatever of other insurance upon the property destroyed. The Court overruled the motion, and submitted the case to the jury, who found for the defendant. The plaintiff's motion for a new trial upon the same ground was also refused by the Court.

The plaintiff appeals, and by two exceptions imputes error to the trial Judge in refusing, on the ground stated, its motion for a directed verdict and for a new trial.

The testimony is not as full and as clear on the point in question as it should be. Douglass, the insurance agent, denied that any notice was given him at any time of additional insurance on the property. Adams testified as follows:

"Q. When you came to settle that loss to whom was the settlement made? A. Me and Mr. Douglass.

"Q. Did Mr. Edens have anything to do with the settlement? A. He brought the check out there to me.

"Q. You can state what happened between you and Mr. Douglass at that time. A. Well, when Mr. Edens brought the check out there he asked me to sign the check and he would carry it back and deposit it in the bank, and I told him no, I decided never to put any more money in that bank.

"Q. Did you and he have any difference over some item? A. Yes, sir.

"Q. As to how these proceeds should be applied, was that it? A. Well, the difference bewteen us was on some other little matters.

"Q. The difference was on how the proceeds of this check were to be applied? A. He wanted me to pay him up, and

I told him—. (Objected to as not responsive to the allegation of the amended answer. Overruled.)

"Q. Mr. Adams, in that conversation with Mr. Douglass was anything mentioned by you to him of other insurance? A. Yes, sir.

"Q. Was that mentioned or not by you to Mr. Douglass in your discussion with Mr. Douglass as to how—. (Objected to on the ground that it is leading.)

"The Court: You had better direct it down to the time Mr. Nock asked the question of Mr. Douglass.

"Q. Was that or not, at the time you had the conversation with Mr. Douglass when the check was being made? A. When the check was being made. (Objected to, as leading. Objection overruled.)

"Q. When did you have the conversation with Mr. Douglass? A. The day he gave me the check for my part of the money. Now, if you will allow me, I will tell you how the question came up.

"Q. That was what I was going to ask you, how it came up? A. He asked me to pay the debt of my son, my son owed, and I told him to wait until I got my other insurance and I would pay it."

It is to be noted that Adams testified that, in his conversation with Douglass, he spoke of the other insurance. It does not appear, however, with positive certainty, whether the conversation took place before or after the check was delivered. It appears that Douglass was the agent of the company, and also the cashier of a bank to which a son of Adams was indebted. It further appears that an arrangment was made, whereby a part of the insurance money was applied to an obligation at the bank, and that Douglass gave Adams a cashier's check for the part of the money not so applied. Adams' testimony on this point is as follows:

"Q. You cashed the George Washington check in Wadesboro? A. I did, on (or) the cashier's check he gave me.

"Q. Who gave you a cashier's check? A. Douglass.

"Q. You took those (yours) to the bank and got a cashier's check in the place of it? A. I did not take all, he kept it.

"Q. You endorsed it? A. I did.

"Q. And you handed it back to him? A. Yes, I did not endorse it until he gave me the cashier's check for the balance of my money either.

"You made him give you your money first before you endorsed the check? A. No, he promised to do it, and he wrote the cashier's check out.

"Q. I understood you to say that you made him give you the cashier's check for your money first? A. No, if I said it, I did not mean to say so."

We think from this testimony that the jury might reasonably have inferred that, when Adams called on the agent to get the insurance money, and before the check was delivered to him, the conversation with respect to the payment, with a part of it, of his son's indebtedness to the bank, took place; and it was during that conversation, Adams testified, that he stated to the agent that he had other insurance, and would pay the debt out of that insurance when he got it. While the record, as we have said, is not absolutely clear on this point, we think that the testimony quoted, when considered with other testimony in the case, made an issue of fact as to waiver by the company of the forfeiture which was properly submitted to the jury.

The appellant further contends that, at the time of the alleged conversation between Douglass and Adams, Douglass, in trying to get Adams to apply a part of the insurance money to the payment of his son's indebtedness to the bank, was acting for the bank and not as agent of the company, and therefore, even if Adams told him of the additional insurance, this was not notice to the company.

We do not think this contention is sound. In delivering the check to Adams, and, until actual delivery was made, Douglass was acting as agent of the company. Under the

testimony, it was a question of fact for the jury to determine whether at the time the defendant advised Douglass, if he did so advise him, that he had other insurance on the property, Douglas was acting for the bank or was still acting as agent of the company. We think that, under the facts and circumstances disclosed by the testimony, all issues were properly submitted to the jury.

In *Rowell v. Fireman's Insurance Co.,* 142 S. C., 457, 141 S. E., 20, it was held: "If more than one inference can be drawn from the testimony, question of fact is made for jury"—citing *Rogers v. Atlantic Life Insurance Co.,* 135 S. C., 89. 133 S. E., 215, 45 A. L. R., 1172; *Hollings v. Bankers Union,* 63 S. C., 197, 41 S. E., 90.

In *Allen v. Jefferson Standard Life Insurance Co.,* 139 S. C., 41, 137 S. E., 214, the Court said: "Even though no one of the facts is sufficient in itself to warrant an inference of waiver, yet if, taken together, they tend to produce that result, then there is no error in submitting that question to the jury"—citing *Cope v. Jefferson Standard Life Insurance Co.,* 134 S. C., 532, 133 S. E., 440; *Clark v. Southeastern Life Insurance Co.,* 101 S. C., 249, 85 S. E., 407.

The judgment of the Circuit Court is affirmed.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES BLEASE and CARTER consur.

MR. JUSTICE COTHRAN (dissenting): It is a conceded fact in this case that, upon a stock of goods and fixtures, sworn by the insured to have been of the value of $3,654.89 (mark the exact figures in dollars and cents), the insured was carrying insurance to the amount of $7,500.

It is also a conceded fact that, in the proofs of loss relating to the particular policy in question, the insured made an affidavit, in order to collect the $3,000, "that the total insurance covering, at the time of said fire, in whole or in part,

on any of the within described and insured property, including the above and all other policies, binders and/or other agreements to insure, whether valid, or invalid, was $3,000 *and no more.*

It is also a conceded fact that, upon the representation made by the insured in the proofs of loss, the company paid him $2,824.27.

It is also a conceded fact that, in addition to the $2,824.27 paid by the plaintiff company, the insured collected from other companies, with which he held the other policies covering the same property, $3,125.20, making a total collection of insurance, upon property which he under oath and with apparent exactness, valued at $3,654.89, amounting to $5,949.27.

It is also a conceded fact that the policy here involved contained a provision that: "Unless otherwise provided by agreement in writing added hereto this company shall not be liable for loss or damage occurring. Other Insurance. (a) While the insured shall have any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy."

In this action brought by the insurance company to recover the amount paid by it upon the policy in question, upon the ground of the false representation by the insured that he had no other insurance upon the property than the policy then being adjusted, the only defense that the defendant sets up is that he acquainted the agent of the company, at the time of the settlement, with the fact that he had other insurance upon the property; and from that fact claims that the company has waived the express condition in the policy above set forth.

Of course the burden is upon the defendant to establish the facts upon which he relies as a waiver. Upon that issue it is correctly and pertinently stated in the opinion of Mr. Justice Stabler: "The testimony is not as full and as clear on the point in question as it should be * * * It does not

appear, however, with positive certainty, whether the conversation took place before or after the check was delivered. * * * While the record, as we have said, is not absolutely clear on this point. * * *

It is pertinent therefore to examine the evidence, and see just what did transpire between the insured and Douglass, the agent of the company, and at the same time cashier of the bank at Cheraw.

After the proofs of loss were submitted, the company sent a check for the amount at which the loss was adjusted, $2,824.27, to the agent Douglass, for delivery to Adams. He was notified, and went to the bank, of which Douglass was cashier, for the check. It was offered to him by Edens, an employee of the bank; he then proceeded to have a settlement with Douglass, the cashier; at that time Adams owed a note at the bank, and it was agreed that Douglass should deduct the amount of his indebtedness from the insurance check and give him a cashier's check for the difference. Adams endorsed the check and handed it to Douglass. He testified that, while the cashier's check was being made out for the difference between the insurance check and the note Adams owed the bank, Douglass (of course as cashier of the bank) wanted to deduct also a note which was due to the bank by a son of Adams. It was at this time, after Adams had endorsed the check and handed it to Douglass to perfect the settlement between him and the bank, and while the cashier's check was being made out, that Adams declined to allow his son's note to be deducted, and as he testified: "He asked me to pay the debt of my son, my son owed, and I told him to wait *until I got my other insurance* and I would pay it."

It seems to me perfectly clear that, if this can be considered notice to Douglass that his affidavit, to the effect that he had no other insurance upon the property, was untrue, and that he did have such other insurance (which, owing to its vagueness, is not at all certain), it was notice to Douglass

as cashier of the bank, and not as the agent of the company. The transaction, so far as the company was concerned, was closed at the time the check was endorsed by Adams and delivered by him to Douglass for a settlement with the bank. The insurance company had no interest in that settlement, and no rights to be protected. If as a fact, at that time, Adams had made a full disclosure of the true facts, Douglass, having delivered the check and Adams having indorsed it and handed it back to Douglass for the settlement with the bank, could not, as the representative of the company, have recaptured and held the check. It was Adams' property as soon as it was delivered, indorsed, and handed back to Douglass for the settlement; the transaction between Adams and Douglass, as agent of the company, was at an end; what transpired thereafter was a transaction between Adams and Douglass, as cashier of the bank, in no manner binding upon the company.

It is very significant that when Adams filed his answer he did not at all rely upon any such alleged notice to Douglass. His answer originally contained a general allegation that the company had notice of the outstanding other policies when the settlement was made. Upon motion of the plaintiff for an order requiring him to make his answer definite and certain, by alleging "in what manner and to what agent or representative of plaintiff company information was communicated of the issuance of the other fire insurance upon the property of the defendant," the motion was granted, and an amended answer was filed which contained the allegation "that this defendant does not remember the name of the agent to whom he talked in reference to the policy of insurance in this action, and therefore he cannot give the name of such person." In his testimony he admits that he knew Douglass well; he manifestly was not the agent to whom he referred in his answer. It transpired that one Harrison, adjuster for the other companies, was the man to whom notice of other insurance was given. "It is necessary that

the knowledge of an agent, in order to bind the company, should have been obtained by him in the course of his employment. If obtained while doing an act in no way connected with his agency, the company is not bound." 2 Joyce, Ins. (2d. Ed.), § 544.

In *Satterfield v. Malone* (C. C.), 35 F., 445, 1 L. R. A., 35, it was held "that, in order to so affect the principal it must be affirmatively shown that such knowledge was acquired by the agent in the course of the business in which he was employed for his principal."

In *Distilled Spirits (Harrington v. United States)*, 11 Wall. 356, 20 L. Ed., 167, it was held that the principal "is not bound by knowledge communicated to his agent, unless it is present to the agent's mind at the time of effecting the purchase," and that of this there should be "clear and satisfactory proof."

Applied to the case at bar, the notice to Douglass, that there was other insurance, must be shown by "clear and satisfactory proof" to have been received before he delivered the check. On the contrary, it appears by the defendant's own testimony that it was received, weak as it is, after the check had been delivered and endorsed. See, also, *Blowers v. Southern Ry.*, 74 S. C., 221, 54 S. E., 368; *Bacot v. South Carolina Loan & Trust Co.*, 132 S. C., 340, 127 S. E., 562 (and cases cited therein).

The agency of Douglass comprised the simple act of delivering the check for the insurance and taking up the policy for remission to the company. He performed this office by delivering the check to the defendant, and, I assume, taking up the policy. Up to that time there had been no notice given to him. Thereafter he was acting in an entirely different capacity.

This case has been treated as if it were an action by the insured upon the policy, the defendant setting up a forfeiture, and the plaintiff countering with a claim of waiver. It is not of that character; it is an action to recover money

received under a misrepresentation of a material fact. Even if Douglass had received notice of the other insurance before he delivered the check, his agency, simply to deliver the check, would not imply the right to waive the company's claim on account of the misrepresentation.