PETERS v. GREAT AMERICAN INS. CO., NEW YORK.

No. 5948.

United States Court of Appeals Fourth Circuit.

Argued Oct. 6, 1949.

Decided Nov. 8, 1949.

David W. Robinson and John E. Edens, Columbia, S. C. (Robinson & Robinson, Columbia, S. C., on brief), for appellant and cross-appellee.

Joseph L. Nettles, Columbia, S. C., and Bert Cotton, New York City (Rein, Mound & Cotton, New York City, on brief), for appellee and cross-appellant.

Before SOPER and DOBIE, Circuit Judges, and BARKSDALE, District Judge.

SOPER, Circuit Judge.

This suit was brought by the insured upon a monthly reporting policy of fire insurance on the stock of goods in a manufacturing plant in Johnston, South Carolina, which was destroyed by fire on July 23, 1947. The net loss, after deducting salvage of $200, was $76,161.73. The limit of liability for all contributing insurance set out in the policy was $75,000. The company admitted a liability of $31,663.45 and paid this sum without prejudice to the rights of the parties. The proceedings in the District Court resulted in a judgment against the company for the additional sum of $7,000 in favor of the receiver of the insured who had been appointed by the state court and substituted for the policyholder as plaintiff pendente lite. Both parties appealed and the controversy turns on the interpretation of the policy and upon the bearing of monthly reports made by the insured to the company under the terms of the policy in respect to the value of stock on hand and the amount of specific insurance that is, in this case, insurance in a specified amount, carried thereon.

Monthly reporting insurance is a device whereby the amount of insurance under the policy fluctuates with the value of the changing stock of merchandise in a going business. It is designed to afford complete

coverage and at the same time to avoid the maintenance of insurance in excess of the value of the property insured, so that the amount of the insurance, and the amount of the premium to be paid, are in direct proportion to the value of the goods on hand. Such a policy is obviously more favorable to the insured than a policy for a specified amount where the premium is calculated on the amount of insurance named in the policy although the amount of the risk may be materially less from time to time during the life of the contract. See the opinion of Judge Chesnut in Federal Intermediate Credit Bank of Baltimore v. Globe & Rutgers Fire Ins. Co., D.C.Md., 7 F.Supp. 56.

This end was achieved in the case at bar by condition 9 of the policy which required the insured to report to the company not later than 30 days after the last day of each month the location and value of the property covered by the policy and all specific insurance in force on the last day of each month. Condition 9 also provided that if at the time of any loss the insured had failed to file the required reports the policy should cover not more than the amounts included in the last report of value filed prior to the loss. The liability of the company was governed by these reports since condition 10 of the policy provided that liability thereunder should not in any case exceed that proportion of any loss which the last reported value, less the amount of specific insurance reported, bears to the actual value less the amount of specific insurance at the time of the report. The premium was fixed by condition 11 of the policy which provided that the premium named therein was provisional only and that the actual premium should be calculated at the expiration of the policy by deducting the amount of the specific insurance and determining the average of the remaining values reported by the insured. These conditions of the policy are set out in full in the margin.[1]

1. "9. Value Reporting Clause—It is a condition of this policy that the Insured shall report to this Company not later than thirty (30) days after the last day of each month, the exact location of all property covered hereunder, the total value of such property at each location and all specific insurance in force at each of such locations on the last day of each month. At the time of any loss, if the Insured has failed to file with this Company reports of values as above required, this policy, subject otherwise to all its terms and conditions, shall cover only at the locations and for not more than the amounts included in the last report of values, filed prior to the loss.

"10. Full Reporting Clause—Liability under this policy shall not in any case exceed that proportion of any loss hereunder which the last reported value less the amount of specific insurance reported, if any, at the location where any loss occurs bears to the actual value less the amount of specific insurance, if any, at that location at the time of such report. Liability for loss hereunder, occurring at any location acquired since filing the last report, (except as provided by the Value Reporting Clause) shall be apportioned in a like manner except that the proportion used shall be the relation that values reported at all locations less the amount of reported specific insurance, if any, bear to the actual values less the amount of specific insurance, if any, at all locations at the time of such report.

"11. Premium Adjustment Clause—The premium named in this policy is provisional only. The actual premium consideration for the liability assumed hereunder shall be determined, at the expiration of this policy, by application of the following formula:

"After deducting the amount of specific insurance, if any (not exceeding, however, the amount of value reported), at each location, an average of the total remaining values reported at each location shall be made, and if the premium on such average values at the rate applying at each location herein provided exceeds the provisional premium, the Insured shall pay to the Insurer the additional premium for such excess; and, if such premium is less than the provisional premium, the Insurer shall refund to the Insured any excess paid.

"In consideration of the automatic conditions of this policy, the premium applicable to the amount of any loss payment shall be earned for the term of the policy. The Insured shall pay this Company an additional premium computed from the date of the loss to the expiration of this policy on the amount of loss payment. Such premium may be deducted from the loss payment or shall be charged as an additional earned premium.

It will be perceived that, within the maximum set by the policy, the amount of the insurance carried, the amount of the premium to be paid and the extent of the liability of the company under a policy of this kind are controlled by the policy holder. It is true that the policy provides that the insured shall report monthly the actual value of the property covered and the actual amount of the specific insurance thereon. Nevertheless, if he fails to do so, the policy is not void, but the amount of the insurance and of the premium are adjusted to the amounts he has chosen to report. Hence he may reduce the premium and the liability of the company, and carry a portion of the risk himself, if he sees fit to do so. The District Judge expressed this thought in his opinion as follows:

" * * * The undoubted purpose of the policy was to give the insured complete coverage up to the limit of liability, if it desired it. Whether or not the insured got complete coverage depended upon the insured's monthly reports of actual values. If the insured reported its actual values at the end of each month, it would have complete coverage. But, if it reported less than its actual values, it would have proportionately less coverage and a proportionately smaller premium. By its reports the insured could not extend the insurer's liability beyond the agreed limit of liability, but it could reduce both its premium and its coverage by reporting a less amount of value than it actually had."

The liability of the insurance company under a policy of this kind was considered by the court in Wallace v. World Fire & Marine Ins. Co., D.C.S.D.Cal., 70 F.Supp. 193, affirmed 9 Cir., 166 F.2d 571. The actual value of the stock of the policyholder at the time of his last report was $28,140 and his loss in a fire which occurred soon afterwards was $27,253.17, but the value shown by the report was $2,000. It was held that he was entitled to recover only on the basis of his report.

This interpretation of the policy is not controverted by the policyholder who agrees that the sum of $31,633.45 paid by the company correctly states the measure of its liability, if it is determined on the basis of the insured's monthly reports. The last monthly report dated May 1, 1947, which purported to state the value of the stock as of April 30, 1947, was incorrect in that it stated the total actual value to be $41,000 whereas the true value was $82,672.67. The report correctly stated the amount of the specific insurance to be $12,500, but this insurance expired before the fire. The contention of the policyholder is that this understatement of the value of the stock on hand April 30, 1947 was induced by the conduct of the company's agent, and therefore the company waived compliance with the conditions of the policy and is estopped to insist upon their observance; and in addition, the policyholder contends that the company had actual notice through its agent that the specific insurance of $12,500 had expired before the fire; and because of these facts, the company is liable in the sum of $75,000, the full limit of its liability named in the policy.

These contentions were raised in the course of the proceedings in the District Court. The original complaint stated a case of breach of contract and claimed the sum of $75,000, and the company in its answer rested its defense upon the restriction of its liability under the terms of the policy to the situation disclosed in the last monthly report of the insured, and averred that the policyholder was entitled only to the sum of $31,633.45 which it offered to pay and subsequently did pay. In reply the insured relied upon waiver and estoppel with respect to the mistake of value in its report, alleged that the company had knowledge of the expiration of the specific insurance, and prayed that its monthly reports be reformed to reflect the true value of the insured goods. The District Judge separated the trial of the legal from the

"It is a further condition of this policy, anything to the contrary notwithstanding, that the final adjusted premium as provided in this Clause shall in no event be less than $100."

equitable question, and, reserving the issue of reformation, first received the evidence as to the questions of waiver and estoppel in a trial with a jury. Upon the completion of the plaintiff's evidence at this trial he directed a verdict for the defendant. Subsequently he heard additional evidence on the equitable phase of the case and denied the insured's right to reform the reports but held that the company was liable for the additional sum of $7,000 as aforesaid.[2]

We first consider the ruling that the company was not estopped to apply the terms of the policy to the facts shown in the last monthly report. To establish its contention in this respect the policyholder offered evidence to the following effect. The insured, who had been accustomed to carry specific insurance on its merchandise, was advised to secure a monthly reporting policy of fire insurance and in consequence took out the policy of January 8, 1947 in suit from J. M. Edwards who conducted a local insurance agency and was also cashier of the insured's bank of deposit at Johnston, South Carolina. The insured desired full insurance on his stock of goods and this fact was known to Edwards. Although the policy called for monthly reports, as we have seen, none was filed by the insured until May 19, 1947 when reports for January, February, March and April were filed simultaneously. No reports were made subsequently. The reports filed were made on printed forms furnished by the company which plainly requested the insured to be careful to include all values insured under the caption "total actual value" in order to comply with the reporting clause of the policy. Notwithstanding this warning, the total actual value of merchandise stated in each of these successive reports as on hand at the end of the month was computed by merely subtracting the amount of the month's sales from the value of merchandise on hand at the end of the preceding month as indicated in the report of that month, using even thousands of dollars instead of exact figures and without taking any account of the purchases during the month. Thus the report of February showed actual values of $60,000 computed by deducting sales of $15,000 during January; the report of March 1 showed actual values of $53,000 computed by deducting sales of $7,000 in February; and the values on April 1 and May 1 were computed and stated as $47,000 and $41,000 respectively by deducting sales of $6,000 in each of the preceding months.

The only explanation of this obvious failure to make full reports of total values is found in the testimony of an official of the insured who made out the reports. He said in effect that he made them out according to the instructions of Edwards who told him to take the amount of the inventory at the beginning of the month and subtract the sales during the month. He admitted, however, that he knew that an inventory at the end of a month must be computed by subtracting the sales and adding the purchases during the month from the inventory at the beginning of the month, and that Edwards did not instruct him not to add the purchases. He admitted also that he did not take the trouble to read the brief instructions clearly printed in bold type at the top of the forms.

The appellant's contention is that this evidence, if accepted by the jury as true, would require the holding that the company waived the observance of the conditions of the policy and is now estopped to assert them. It is difficult to reach the conclusion that the insured was induced by the conduct of the company's agent deliberately to understate the value of the stock and thus reduce the amount of the insurance. The agent had no means of knowing the value of the merchandise on hand and no motive to reduce the amount of the insurance or the amount of the premium upon which his own commissions depended. Indeed the appellant's witness refused to say that the agent specifically instructed the company to take no account of the month's purchases in estimating the end of the

2. It is not necessary to decide whether the liability of the company for the additional sum of $7,000 should have been determined by the jury rather than by the judge in the equity proceeding since there is no dispute as to the facts and the decision of the question turns on the interpretation of the policy.

month's inventory. All that was said was that the reports were filed in accordance with the agent's instructions; but when this statement is coupled with the admitted failure of the official of the company to follow the plain instructions on the form and his admission that he knew that the report was wrongfully computed, there remains no substantial basis in the evidence from which an inference of waiver can reasonably be inferred.

It is equally destructive of the insured's position that the doctrine of waiver is not applicable to the provisions of the policy under examination. It is true that many decisions of the Supreme Court of South Carolina declare that the provisions of an insurance policy may be waived through the behavior of an agent of the company in treating the policy as in effect after he has received information of facts which, but for his conduct, would have voided the contract.[3] It will be observed, however, that all of these cases involved the defense of forfeiture which was held to have been waived by some act on behalf of the company which led the insured to believe that the policy was still in force. The doctrine of waiver, however, does not pertain to matters of coverage so as to extend the scope of the contract beyond its express terms through the acts of an agent not authorized or approved by the company. So it was held in C. E. Carnes & Co. v. Employers' Liability Assur. Corp., 5 Cir., 101 F.2d 739, where it was attempted to show that through the acts of the company's agent an automobile liability policy indemnifying the insured for injuries arising from the use of an automobile in the transportation of farm machinery, crane fixtures and paints, was extended to injuries resulting from the transportation of explosive gas. The court said, 101 F.2d page 742:

"It is well settled that conditions going to the coverage or scope of a policy of insurance, as distinguished from those furnishing a ground for forfeiture, may not be waived by implication from conduct or action. The rule is that while an insurer may be estopped by its conduct or its knowledge from insisting upon a forfeiture of a policy, the coverage or restrictions on the coverage cannot be extended by the doctrine of waiver or estoppel. The substance of the doctrine of waiver as applied in the law of insurance is that if the insurer with knowledge of facts which would bar an existing primary liability, recognizes such primary liability by treating the policy as in force, he will not thereafter be allowed to plead such facts to avoid his primary liability.

"This is a case where the coverage is sought to be extended. The doctrine of waiver cannot be invoked to create a primary liability, and bring within the coverage of the policy risks not included or contemplated by its terms. Estoppel through the knowledge of (its agent) * * * could operate * * * only to relieve as against

---

3. For example, rulings of this kind have been made as to clauses providing that the insured shall keep his records in an iron safe; that no additional insurance shall be taken out without the consent of the insurer; that insurance shall cease in the event that the insured premises are mortgaged, or that the insured goods are moved to another location without the insurer's consent. McMillan & Son v. Insurance Co., 78 S.C. 433, 58 S.E. 1020, 1135; Whaley v. Guardian Fire Ins. Co., 124 S.C. 173, 117 S.E. 209; Norris v. Hartford Fire Insurance Co., 57 S.C. 358, 35 S.E. 572; Powell v. Continental Insurance Co., 97 S.C. 375, 81 S.E. 654. Similarly, provisions and statements as to manner of payment of premiums, notice of loss, physical condition of the insured, and the existence of other encumbrances on the insured property may be waived. Welch v. N. Y. Life Ins. Co., 183 S.C. 9, 189 S.E. 809; Walker v. New Amsterdam Casualty Co., 157 S.C. 381, 154 S.E. 221; Johnson v. Life & Casualty Co., 191 S.C. 96, 3 S.E.2d 805; George Washington Fire Ins. Co. v. Adams, 148 S.C. 238, 146 S.E. 15. The reluctance of the South Carolina courts to sanction a forfeiture is apparent from cases wherein waiver has been held to preclude the insurer from asserting a right to forfeit the policy because of a lack of insurable interest, or by reason of the fact that an insured vehicle was used in public service when this use was expressly prohibited in the policy. Rogers v. Atlantic Life Ins. Co., 135 S.C. 89, 133 S.E. 215, 45 A.L.R. 1172; Graham v. Standard Fire Ins. Co., 119 S.C. 218, 112 S.E. 88.

the consequences of violation of the terms of the policy and not to extend coverage."

See also, McCoy v. Northwestern Mutual Relief Ass'n, 92 Wis. 577, 66 N.W. 697, 47 L.R.A. 681; Miller v. Illinois Bankers' Life Ass'n, 138 Ark. 442, 212 S.W. 310, 7 A.L.R. 378; 29 Am.Jur. Sections 801, 903, 904; 16 Appleman, Insurance Law and Practice, §§ 9083, 9090; Washington Nat. Ins. Co. v. Craddock, 130 Tex. 251, 109 S.W.2d 165, 113 A.L.R. 857.

This limitation of the doctrine of waiver also prevails in South Carolina. It is true that in one or two of the cases cited in the footnotes broad language is used from which one might conclude that any provision of an insurance policy might be waived by the act of an agent; see Powell v. Continental Insurance Co., 97 S.C. 375, 81 S.E. 654; Johnson v. Life & Casualty Ins. Co., 191 S.C. 96, 3 S.E.2d 805; but the question actually decided in these cases related to forfeiture, and when the distinction was brought squarely to the attention of the Court in Keistler Co. v. Aetna Ins. Co., 124 S.C. 32, 117 S.E. 70, it was clearly recognized in both the majority and dissenting opinions. See 124 S.C. 45, 49, 117 S.E. 75. In the latter it was thus expressed:

" * * * This marks the distinction between the two classes of cases: If by the contract the insured assumed a stated risk primarily, and provided for a forfeiture upon the happening of certain conditions, its right to claim such forfeiture may be waived; but, where it expressly and specifically declined to assume such risk, it cannot by its conduct be held to have waived itself into making a contract which had not been entered into.

"All of the many cases in this state in which the principle of waiver has been applied may be explained by the recognition of this distinction. They are, without exception, so far as we have observed, cases of a primary assumption of the stated risk, the forfeiture of which was claimed by the insurer, and a waiver of that forfeiture claimed by the insured."

■ In the instant case the question is one of coverage. Under no reasonable interpretation of this kind of policy can it be said that if the insured fails to correctly state the value of merchandise on hand, the insurer is free to avoid the policy. It was so held in Wallace v. World Fire & Marine Ins. Co., supra, where the insurer contended that the policy was void because the policyholder had grossly understated the value of his stock and the court pointed out that the understatement merely reduced the amount of the recovery. The only cases of monthly reporting insurance that have come to our attention in which the doctrine of waiver was applied are Aetna Ins. Co. v. Rhodes, 10 Cir., 170 F.2d 111, and Home Ins. Co. of New York v. Hightower, 5 Cir., 22 F.2d 882, 62 A.L.R. 620, certiorari denied 276 U.S. 634, 48 S.Ct. 339, 72 L.Ed. 743; but in both instances the company claimed a forfeiture, in the first for failure of the insured to make any monthly report at all, and in the second for the filing of incorrect reports of value, and it was held that the forfeiture claimed might be waived by conduct of the company's agents. These decisions have no bearing upon the present controversy in which the company does not claim a forfeiture but seeks merely to apply the provisions of the contract.

■ The company's cross-appeal raises the question whether it is liable for the additional sum of $7,000, as held by the District Judge, because the company had notice before the fire that the specific insurance of $12,500, stated in the last monthly report, had expired. The judge held that the purpose of the monthly reports was to give the company information from which it could determine the amount of the premium and the amount of its liability, and that the evidence showed that although the company did not have information as to the value of the goods, it did know the expiration dates of the specific insurance and consequently did not need to be told that this insurance expired after the last monthly report and before the fire. On this ground the judge eliminated the specific insurance altogether from the calculation of the company's liability and gave judgment for that proportion of the loss which the value of

the stock reported bore to its actual value at the time of the report.

In our view, this calculation does not conform to condition 10 of the policy which plainly states that the liability shall not exceed that proportion of the loss which the last reported value, less the amount of specific insurance last reported, bears to the actual value less the amount of specific insurance in effect at the time of the report. The amounts disclosed in the last report, compared with the actual facts, as to both stock value and specific insurance, control the amount of the company's liability and the amount of the premium payable by the insured; and changes in these factors which subsequently occur have no bearing upon the problem. One factor is an important as the other and each is beyond the control of the company; and a computation of loss which eliminates one of the factors that compose the report does violence to the terms of the contract.

Since the extent of the liability of the company, within the limits of the policy, and the amount of the premium depend upon the last report which the insured sees fit to make, it is particularly important to bear in mind that if he is not bound by his report when a fire occurs, he can reduce his premium at will, knowing that if his property is destroyed by fire, he need only pay an additional premium to obtain complete coverage. The company's calculation included both factors and was correct since it proceeded on the theory that the payable loss should bear the same proportion to the actual loss as the reported value of the merchandise less the reported insurance thereon bears to the actual value of the merchandise less the actual insurance thereon at the time of the report.

The decision in Michigan Millers Mutual Fire Ins. Co. v. Grange Oil Co., 9 Cir., 175 F.2d 540, upon which the insured relies, is not inconsistent with this conclusion. In that case the insured in making a monthly report of value under a policy of the provisional stock type overstated the amount of his non-provisional (specific) insurance, and it was held that the company was liable for the difference between the amount of the loss and the actual rather than the reported amount of the specific insurance in force. The policy in that case, however, as appears from an examination of the opinion and of the record, was materially different from the policy in suit. It provided that in ascertaining the liability of the company in case of loss the amount of the non-provisional insurance was to be deducted from the value of the property insured, and that if the insured had reported less than the actual value of the merchandise in his periodic reports, this difference should also be deducted from the amount of the loss; but there was no provision in the policy which required the deduction of the *reported* as distinguished from the *actual* amount of non-provisional insurance held by the policyholder. The policy in the instant case, on the other hand, very clearly requires that in computing the loss not only the *reported* value of the merchandise but also the *reported* amount of specific insurance must be taken into account.

■ There is no sound basis for the appellant's additional contention that the insured should be allowed to reform the reports so as to recover the amount to which it would have been entitled if the reports had been correct in the first instance. In this respect, as the judge held, the insured is not asking to reform a contract entered into by reason of fraud or mistake, but is asking permission to reform its acts for its own benefit and to the detriment of the company, after a loss has occurred and the rights of the parties have become fixed under the terms of the contract. These facts furnish no basis for the application of the equitable doctrine of reformation.

The judgment of the District Court is affirmed in part and reversed in part, and the case is remanded for further proceedings.

Affirmed in part, reversed in part, and remanded.