# Richmond

## Virginia Auto Mutual Insurance Company v. Randolph L. Brillhart, an Infant, etc.

March 1, 1948.

Record No. 3297.

Present, All the Justices.

The opinion states the case.

*Fred B. Gentry* and *M. Wallace Moncure, Jr.,* for the plaintiff in error.

*Kime & Hoback* and *T. W. Messick,* for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

In December, 1944, Virginia Auto Mutual Insurance Company, hereinafter referred to as the Insurance Company, issued to A. P. Huffman of Maggie, Craig county, Virginia, a standard automobile liability policy insuring him against liability for bodily injuries or property damage arising out of the operation of a 1937 Ford coupe which he then owned. The coverage extended from December 21, 1944, to December 21, 1945, and was limited

to the sum of $10,000 for personal injuries sustained by "each person." The premium required for the twelve months' period was paid in full.

On or about May 19, 1945, Huffman sold the automobile to Luther Owens of New Castle, Craig county, Virginia, for the sum of $310, $100 of which was paid in cash and the balanced evidenced by a series of notes signed by the purchaser and secured by a conditional sales contract on the car.

On June 21, 1945, the Division of Motor Vehicles issued to Owens a certificate of title showing his purchase of the car from Huffman, with the reservation of a lien thereon in favor of the latter.

All of the papers required for the transfer of the title to the car, including the assignment of title by Huffman, the application for a new certificate of title by Owens, and the purchase-money notes, were prepared by Miss Margaret Showalter of New Castle, in whose presence the transaction was closed.

Miss Showalter, in addition to her duties as secretary to Hon. George W. Layman, was the local agent for a number of insurance companies, including Virginia Auto Mutual Insurance Company. In fact, she had countersigned, delivered and collected the premium on this particular policy.

At the time of the closing of the transaction for the sale of the car by Huffman to Owens, Owens expressed the desire and intention to procure a policy of insurance on the car. Whereupon Huffman replied that this would not be necesssary since he (Huffman) had a policy which covered the automobile and which he "would let go with the car." Huffman did not have the policy with him at the time, but agreed to deliver it to Owens later, and did so within the week.

While the conversation between the two men with respect to the transfer of the insurance took place in the presence of Miss Showalter, nothing was said to or by her about effecting a transfer of the policy, nor was any en-

dorsement made on the policy changing the name of the "insured" from Huffman to Owens. Indeed, except for such knowledge as was imputed to it by the knowledge of its agent, Miss Showalter, the Insurance Company was never notified of the change of ownership of the car. Owens, however, kept the policy and rested secure in the belief that it protected him.

Immediately after the closing of the transaction Owens took possession of the car. On July 15, 1945, while the car was being driven by James Davis, under the direction and control of Owens, it was involved in a collision in which Randolph L. Brillhart, the defendant in error here, was injured.

On July 20, 1945, Miss Showalter wrote the home office of the Insurance Company of the accident and of Brillhart's injuries. In this letter she stated that the car had been sold by Huffman to Owens about two months prior to the accident, but that no application had been made to her for a transfer of the insurance to Owens, and that she did not know whether such a transfer had otherwise been effected.

Shortly thereafter counsel for Brillhart made claim on the Insurance Company for settlement of the damages sustained by him (Brillhart) as the result of the collision in which the car had been involved. In reply the company denied that there was "coverage" under the policy for the claim.

On September 19, 1945, the company wrote Huffman that the policy which had been issued to him on the car had become "ineffective" as of the date of the sale of the car by him to Owens. It requested that Huffman return the policy to the company "immediately for cancellation effective" on the date of the sale, and offered to refund to him the unearned portion of the premium.

In reply Huffman wrote declining to return the policy, saying that when he sold the car to Owens he had told the latter that "the policy went with the car." Moreover, he wrote that Brillhart had instituted suit against both him

(Huffman) and Owens to recover damages for his (Brillhart's) injuries as the result of the collision.

In February, 1946, Brillhart recovered a judgment of $5,000, with interest, against Owens and Davis, but not against Huffman. Upon the refusal of the Insurance Company to satisfy the judgment, Brillhart instituted suit against it, claiming the right to recover the amount of his judgment against Owens under the terms of the policy.

Both parties having waived a jury, all matters of law and fact were submitted to the trial court which entered a judgment in favor of Brillhart against the Insurance Company for the amount claimed to be due. The matter is now before us on a writ of error awarded the Insurance Company.

Much has been said in the briefs on both sides as to whether the policy was forfeited, or became "null and void," by reason of the change of ownership of the car, from the named insured, A. P. Huffman, to the purchaser, Luther Owens, without the consent of the Insurance Company endorsed on the policy.

While insurance policies frequently contain provisions which vitiate the contract upon a change in the title to or ownership of the insured property, without the consent of the insurer endorsed on the policy,[1] there is, as the trial court pointed out in its written opinion, no such provision in the policy before us.

The pertinent provisions on the change of ownership are these:

"15. CHANGES. No notice to any agent, or knowledge possessed by any agent or by any other person shall be held to effect a waiver or change in any part of the policy nor estop the company from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part hereof, signed by the President and Secretary; pro-

[1] For example, see *Royal Indemnity Co.* v. *Hook*, 155 Va. 956, 157 S. E. 414; *Atlantic Trust, etc., Co.* v. *Girard Fire, etc., Ins. Co.*, 156 Va. 15, 157 S. E. 570, where we dealt with such provisions.

vided, however, that changes may be made in the written portion of the declarations signed by the President and Secretary and countersigned by an authorized representative of the company.

"16. ASSIGNMENT. Assignment of interest under this policy shall not bind the company until its consent is endorsed hereon; * * * ."

There is no suggestion in either of these provisions that a change of ownership of the car worked a forfeiture of the policy. Their manifest purpose is to require the consent of the company in order to effect a transfer of coverage from the named "insured" to another.

The problem presented is one of *coverage* and not of *forfeiture*. The question is whether the coverage afforded by the policy to Huffman was extended or transferred to Owens. If Owens was covered or protected by the policy, then Brillhart was entitled to recover of the Insurance Company. On the other hand, if Owens was not so protected or covered, Brillhart's claim against the Insurance Company cannot be sustained.

Brillhart insists that Owens was protected by the policy for two reasons:

First, he says, under the "omnibus coverage" provision of the policy, protection was afforded to any one who was using or driving the car "with the permission of the named insured," Huffman; that when Huffman sold the car to Owens and the latter took immediate possession of it, this constituted a "permission" by Huffman to Owens to use the car, within the meaning of the above provision of the policy, and that hence its coverage was extended to Owens.

Although the trial court took this view of the matter and sustained a recovery on that ground, it is not, in our opinion, sound.

"Permission" or "consent" to use or drive a car within the meaning of such a provision must come from someone who is in a position to give or grant it. His relation to or control over the car must be such that he has a right to give or withhold the permission or consent to use it.

As is said in 5 Am. Jur., Automobiles, section 535, p. 806, "For one's use and operation of a car to be 'with the express or implied consent' of the named insured, within the meaning and effect of the omnibus clause, the relation of the named assured to the car must be such that he or it is in a position to give consent." See also, 45 C. J. S., Insurance, section 829, pp. 900, 901, and cases there cited.

In the case before us upon the sale of the car Owens, the vendee, took immediate possession of it. Huffman's possession of it, and his right to control its use, ceased and passed to Owens. And this was so although Huffman retained a lien on the car for a part of the unpaid purchase price. After the consummation of the sale, Owens' use of the car was by virtue of his ownership of it and his right to control it, and not by virtue of the grant of any permission to him by Huffman. See *Fagg* v. *Massachusetts Bonding, etc., Co.*, 142 Or. 358, 19 P. (2d) 413; *Whitney* v. *Employers' Indemnity Corp.*, 200 Iowa 25, 202 N. W. 236, 41 A. L. R. 495.

Second, Brillhart says, when Huffman sold the car to Owens, Huffman at the same time, by parol, transferred and assigned to Owens his (Huffman's) interest in the policy and coverage thereunder; that although the Insurance Company did not signify "its consent" to such change or transfer, by an endorsement on the policy, as was required by clauses 15 and 16 of the policy, through the conduct of its agent, Miss Showalter, it waived these provisions of the policy and was estopped to assert the lack of compliance therewith as a defense to the present suit.

■ It is well settled both in this jurisdiction and elsewhere that although a policy may stipulate that the provision, requiring an endorsement thereon to effect a change in its terms, may not be waived, such a provision may itself be waived by the insurer or his lawful agent (*Virginia Fire, etc., Ins. Co.* v. *Richmond Mica Co.*, 102 Va. 429, 439, 46 S. E. 463, 102 Am. St. Rep. 846; *Atlantic Trust, etc., Co.* v. *Girard Fire, etc., Ins. Co.*, 156 Va. 15, 23, 157 S. E. 570; *Woodmen of World Life Ins. Soc.* v. *Grant*, 185 Va. 288,

300, 38 S. E. (2d) 450, 455),[2] unless there are limitations on the authority of the agent which are known to the assured (*Royal Ins. Co.* v. *Poole*, 148 Va. 363, 138 S. E. 487; *Royal Indemnity Co.* v. *Hook*, 155 Va. 956, 968, 157 S. E. 414). "In other words, a nonwaiver clause may itself be waived." 29 Am. Jur., Insurance, section 820, pp. 624, 625.

The record shows that Miss Showalter was the local agent of the Insurance Company, with authority to solicit insurance, to receive and forward applications for policies, to countersign and deliver policies, and to collect the premiums therefor. Indeed, as has been said, she performed such functions with respect to the identical policy with which we are concerned. On December 21, 1944, she transmitted to the home office of the Insurance Company a request for the issuance of the policy to Huffman, effective on that date. This request was received at the home office on December 23, and the policy was countersigned on the 29th, with coverage effective from the date of the application.

Moreover, Miss Showalter likewise had authority to receive and transmit to her principal, the Insurance Company, an application for the transfer of the insurable interest in the policy from Huffman to Owens.

To Huffman and Owens she was the Insurance Company. Their only contact with it was through her. They had no knowledge of any limitations on her authority. So far as they knew she had full power and authority to protect their interests, and in so doing, to bind her principal.

In *Royal Indemnity Co.* v. *Hook, supra* (155 Va., at pages 965, 966), this is said:

"Knowledge to the insurance agent as to matters affecting the policy when issued is knowledge to the company; provisions as to forfeiture and avoidance of breach of conditions being for its benefit, may be waived by it, and the company is estopped to set up forfeitures when, with such knowledge, it issues a policy and accepts a premium.

---

[2] See also, 29 Am. Jur., Insurance, section 820, pp. 623-625; Couch Cyclopedia of Insurance Law, Vol. 6, section 1450-v, p. 5172 *ff*; *Id.*, Vol. 2, section 540, p. 1659 *ff*.

*Lynchburg Fire Ins. Co.* v. *West,* 76 Va. 575, 44 Am. Rep. 177; *Harrison* v. *Provident Relief Ass'n,* 141 Va. 659, 126 S. E. 696, 40 A. L. R. 616; Michie's New Digest Va. & W. Va. Rep., volume 5, pages 907, 940, 941, where the authorities are collected.

" 'The insurance agent, within the general scope of the business he transacts, is *pro hac vice* the insurance company. What he knows they know. What he does they do. He has power to bind and to loose, and no limitation on his power unknown to strangers will bind them.' *Coles* v. *Jefferson Ins. Co.,* 41 W. Va. 261, 23 S. E. 732, 733.

" 'The powers of the agent are, prima facie, coextensive with the business intrusted to his care, and will not be narrowed by limitations not communicated to the person with whom he deals. An insurance company, establishing a local agency, must be held responsible to the parties with whom they transact business for the acts and declarations of the agent, within the scope of his employment, as if they proceeded from the principal.' *Union Mut. Life Ins. Co.* v. *Wilkinson,* 13 Wall. (80 U. S.) 222, 235, 20 L. Ed. 617.

" ' "The tendency of the courts at the present day is towards a liberal, rather than a strict construction of an agent's power." Joyce on Insurance, section 425.' *Harrison* v. *Provident Relief Ass'n,* 141 Va. 659, 126 S. E. 696, 40 A. L. R. 616."

These principles apply with equal force and effect to the case now before us.

We come, then, to the crucial point in the case. Did the conduct of Miss Showalter, the agent of the Insurance Company, constitute a waiver of the provision in the policy requiring an endorsement thereon to signify the company's consent to the transfer of the coverage from Huffman to Owens? Was the Insurance Company estopped by her conduct from asserting the defense that coverage was not transferred to Owens, in the manner required by the policy?

Miss Showalter, of course, knew that Huffman was transferring his interest in the car to Owens. She also knew that both men were not familiar with matters of this kind,

and that they were relying upon her, as they had in the past in similar transactions, to do what was necessary to protect their interests.

Both men testified that the conversation which they had with reference to transferring the insurance policy along with the car to Owens, took place in her presence and within her hearing. While it is true that she did not take part in the conversation, she did not deny that it occurred, nor did she, in the final analysis, deny that she heard it.

Her full testimony on the subject reads thus:

"Q. It has been testified here that there was a conversation between A. P. Huffman and Luther Owens wherein it was allegedly the thought in the mind of A. P. Huffman that the policy of insurance here in question should go to Luther Owens along with the sale and transfer of the car. Do you have any recollection at this time of any such conversation?

"A. No, I don't. They may have had such a conversation, but I was probably busy with the title and I did not hear anything. I don't remember hearing anything about it.

"Q. You don't remember hearing anything about it at all?

"A. No, I can't recall; I won't say there was not one; I won't say they did not say it, but I don't have any recollection of anything being said."

The purport of Miss Showalter's testimony, then, is that at the time of the trial she had no "recollection" of such a conversation.

On the other hand, a fair inference to be drawn from the positive testimony of the two men that the conversation took place in her presence and in her hearing, was that she must have heard it. Such inference was not overcome by her negative testimony that she did not "remember," "recall," or "recollect" the incident.

Moreover, she was in the business of writing insurance for profit. If the Huffman policy was not to be transferred to Owens, then the latter was an on-the-spot prospect for a new policy. And yet she did not solicit his application for

insurance on the car. This is an added circumstance to support the view that she knew that the Huffman policy was being transferred with the car.

That Owens desired insurance on the car is clear, for he testified that had he not thought that he was covered by the transfer of the Huffman policy, he would have taken out other insurance.

If Miss Showalter heard the conversation of the two men with respect to the transfer of the insurance, as we think she did, she knew that Owens was relying upon the policy for protection.

Being familiar with such matters, Miss Showalter must have known that an endorsement on the policy was required by its terms in order to transfer the coverage to Owens. Indeed, as has been said, her letter of July 20, 1945, to the Insurance Company, notifying it of the accident, indicated that she was aware of this provision of the policy, because she stated that no such transfer had been made by her.

She also knew that she had collected a full year's premium on the policy from Huffman in the previous December. She likewise knew that upon Huffman's sale of the car the policy was of no further benefit to him, and that unless it was transferred to Owens, Huffman was entitled, under its provisions, to have it cancelled and to have a portion of the unearned premium returned to him.

Despite the fact that Miss Showalter knew that both the vendor and vendee of the automobile were looking to her for the protection of their respective interests, she neither effected a transfer of the policy to Owens nor took the necessary steps to have the unearned premium refunded to Huffman. On the contrary, by her silence she acquiesced in the view and belief of the two men that the policy remained in effect and followed the car,—that is, that its coverage was being transferred to Owens,—despite the lack of the required endorsement.

There is no claim by the Insurance Company that the transfer of coverage under the policy from Huffman to Owens would have increased its risk or would have re-

quired a higher premium. Nor does it contend that if formal application had been made to it for the purpose, it would have withheld an endorsement on the policy signifying its consent to the transfer of the coverage.

In short, the Insurance Company's position is that because the required endorsement was not actually obtained, the coverage under the policy was not extended to Owens. And this, too, although it had been paid for coverage which protected no one.

In 2 Couch Cyclopedia of Insurance Law, section 540, pp.1659-1661, this is said: "An agent with authority, actual or apparent, to represent the insurer, may undoubtedly waive a forfeiture arising from an unauthorized alienation of a right, title or interest in the subject-matter of the insurance by consenting thereto, * * * or by telling insured that a written approval or indorsement of consent is unnecessary. * * * And a consent may be given and waiver be effected by the agent without communication with his principal."

In *Fagg* v. *Massachusetts Bonding, etc., Co., supra,* an automobile liability policy contained a provision that in the event the car covered by the policy was sold, "the indemnity provided herein shall not extend to such purchaser, * * * except by the written consent of the company endorsed hereon." The assured sold the car and the purchaser, who desired to avail himself of the protection afforded by the indemnity policy, inquired of the agent of the insurance company whether it was necessary to procure its consent in order to extend the coverage of the policy to him, the purchaser. The agent advised him that the policy covered the car and that no consent was necessary. The purchaser of the car, relying on this statement, did not have the required consent endorsed on the policy, nor did he procure other insurance. While the car was being driven by the purchaser's wife it was involved in an accident. The insurance company denied liability on the ground that no endorsement had been made on the policy signifying its consent to the change in ownership of

the vehicle. It was held that the jury was warranted in finding that the insurance company was estopped, by the acts of its agent, from asserting the defense that the policy did not protect the purchaser of the car and the members of his family.

In *Atlantic Trust, etc., Co.* v. *Girard Fire, etc., Ins. Co., supra,* the policy provided that it should "be void, unless otherwise provided by agreement in writing added hereto, (a) if the interest of the insured be other than unconditional and sole ownership; * * * (d) if any change, other than by the death of an insured, take place in the interest, title or possession of the subject of insurance * * *." The owner entered into a contract of sale for the property. The local agent of the insurance company was told of this and advised the owner that pending the consummation of the sale no endorsement was required on the policy. The insured property was damaged by fire and the insurance company declined to pay the loss, on the ground that the policy had been avoided by reason of the change of interest in the property, to which it had not assented by the required endorsement of the policy.

We held that the insurance company was estopped by the conduct of its agent from asserting a forfeiture of the policy.

While Miss Showalter made no statement either to Huffman or to Owens that the policy followed the car, or that the consent of the Insurance Company to the transfer, in the manner prescribed in the policy, was not necessary, she silently acquiesced in the agreement which she heard the two men make with reference to the transfer of the policy, and thereby led Owens to believe that he was protected, although the terms of the policy had not been complied with.

It is, of course, elementary that silence, when there is a duty to speak, may result in the waiver of one's rights or the estoppel to assert them.

And, so, whether we treat the conduct of the local agent of the Insurance Company as a waiver of the pro-

vision in the policy that its consent to a transfer of the coverage could be effected only by an endorsement on the policy, or as creating an estoppel against the right to assert the defense of noncompliance with the terms of the policy in this respect, the result is the same. Under either aspect Owens should, in our opinion, be afforded protection by the policy against the Brillhart judgment.

The conclusion we have reached makes it unnecessary to decide the other questions discussed in the briefs.

The judgment complained of is

*Affirmed.*