**COLUMBIA FIRE INS. CO. v. BOYKIN & TAYLOE, Inc.**

No. 6134.

United States Court of Appeals Fourth Circuit.

Argued Nov. 17, 1950.

Decided Dec. 16, 1950.

Tazewell Taylor, Jr., and W. R. Ashburn, Norfolk, Va. (Ashburn, Agelasto & Sellers, Norfolk, Va., on brief), for appellant.

Charles L. Kaufman, Norfolk, Va. (Hamilton Plack, Norfolk, Va., on brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

Boykin and Tayloe, Incorporated, (hereinafter called insured) brought a civil action in the Circuit Court of the City of Norfolk, Virginia, on a fire insurance policy against The Columbia Fire Insurance Company of Dayton, Ohio, (hereinafter called insurer) which civil action was removed by insurer to the United States District Court for the Eastern District of Virginia.

Insured is a merchant and its inventory was destroyed by a fire occurring on March 18, 1949. Insured was then insured under what is known as a value reporting policy issued by insurer.

The maximum limit of coverage under said policy was $20,000.00, and the last value which insured had reported prior to the fire was $12,539.54 at August 31, 1948. After the fire, insured reported an inventory value of $24,015.90 as of February 28, 1949, and asserted claim for $20,000.00, the maximum policy coverage. Insurer offered to pay $12,539.54, contending that its liability was limited to the last value reported prior to the fire. Insurer filed an answer admitting liability at $12,539.54, and it moved for summary judgment under supporting affidavit of its general adjustor. Insured countered with a motion for summary judgment upon the contention that insurer had waived the contract provision that the amount payable under the policy should be no more than the value last reported prior to the fire, by its course of conduct, and its motion was supported by affidavits of the agent who wrote the policy at Norfolk, Virginia, and the insured's president.

After the argument of these cross-motions for summary judgment, and after the District Court announced its opinion that insurer's motion for summary judgment should be denied that insured's motion for summary judgment should be granted, insurer contended that the affidavits filed in support of insured's motion for summary judgment were not sufficient to support a finding that insurer had waived or was estopped to rely on the contract provisions, and insurer moved the Court to permit it to take the deposition of affiant John B. Norfleet and one of his office employees as provided in Federal Rules of Civil Procedure, rule 56 (e), 28 U.S.C.A. in order to supplement the contents of Norfleet's affidavit, and in order to show pertinent factual matters not dealt with in Norfleet's affidavit. This motion was denied and judgment entered for the insured for $20,000.00 without any oral testimony in the cause. Insurer has appealed to us.

The purposes and provisions of a value reporting policy, such as the policy under which the instant suit was filed, are thus set forth by Circuit Judge Soper, speaking for our Court, in Peters v. Great American Insurance Co., 177 F.2d 773, 774–775:

"Monthly reporting insurance is a device whereby the amount of insurance under the policy fluctuates with the value of the changing stock of merchandise in a going business. It is designed to afford complete coverage and at the same time to avoid the maintenance of insurance in excess of the value of the property insured, so that the amount of the insurance, and the amount of the premium to be paid, are in direct proportion to the value of the goods on hand. Such a policy is obviously more favorable to the insured than a policy for a specified amount where the premium is calculated on the amount of insurance named in the policy although the amount of the risk may be materially less from time to time during the life of the contract. See the opinion of Judge Chesnut in Federal Intermediate Credit Bank of Baltimore v. Globe & Rutgers Fire Ins. Co., D.C.Md., 7 F.Supp. 56.

"This end was achieved in the case at bar by condition 9 of the policy which required the insured to report to the company not later than 30 days after the last day of each month the location and value of the property covered by the policy and all specific insurance in force on the last day of each month. Condition 9 also provided that if at the time of any loss the insured had failed to file the required reports the policy should cover not more than the amounts in-

cluded in the last report of value filed prior to the loss. The liability of the company was governed by these reports since condition 10 of the policy provided that liability thereunder should not in any case exceed that proportion of any loss which the last reported value, less the amount of specific insurance reported, bears to the actual value less the amount of specific insurance at the time of the report. The premium was fixed by condition 11 of the policy which provided that the premium named therein was provisional only and that the actual premium should be calculated at the expiration of the policy by deducting the amount of the specific insurance and determining the average of the remaining values reported by the insured."

The District Judge, in his opinion below, 90 F.Supp. 647, 649, stated: "Clearly the defendant is equitably estopped to plead, and has irrevocably waived, the reporting requirements of Clause 9 of its policy. Its course of conduct from August, 1947 until the fire in March, 1949 demonstrates that it did not consider a report under Clause 9 as indispensable to fix the amount of the insurance protection in force for the property on hand"

With this we agree and we think, further, that the equities in this case are entirely on the side of the insured.

The policy contains the following provision: "9. *Value Reporting Clause.* It is a condition of this policy that the insured shall report to this Company not later than thirty (30) days after the last day of each month, the exact location of all property covered hereunder, the total value of such property at each location and all specific insurance in force at each of such locations on the last day of each month. At the time of any loss, if the insured has failed to file with this Company reports of values as above required, this policy, subject otherwise to all its terms and conditions, shall cover only at the locations and for not more than the amounts included in the last report of values, filed prior to the loss."

On May 6, 1947, Norfleet issued to the insured the insurer's policy for $8,000.00 of the straight premium type covering said stock of merchandise. This policy was cancelled on August 1, 1947, and in its place Norfleet issued on that date the insurer's reporting form of policy for $14,000.00, which was immediately increased to $20,000.00. When this policy expired on August 1, 1948, Norfleet issued, in renewal thereof, the insurer's policy on which this suit is based, which is substantially identical to the policy of August 1, 1947.

The policy of August 1, 1947, was the first of its type ever written for the insured. It was taken in reliance upon Norfleet's recommendation and upon his assurance that it would involve no more duties or burden for the insured than the fixed premium type of insurance which the insured then carried, and ."that said Agent would attend to and handle any and all details, reports, premium rates, adjustments and all matters involved, the same being a part of his routine service to customers." The insured, accordingly, "depended upon said Agent to do and perform any and all acts or deeds incident to or proper for keeping said stock and merchandise insured against loss or damage by fire to the full extent of its cash value, which affiant (the plaintiff's president) at the time believed would never exceed the sum of $20,000.00." (The quotations in this paragraph and the succeeding paragraphs of this opinion are, unless otherwise indicated, from the affidavit of insurer's agent, Norfleet.)

Information respecting the insured's monthly inventories was furnished by the insured in this manner: "from time to time said Agent would inquire, by telephone or in person, as to the value of the insured property in designated month or months and such information was forthwith furnished said Agent." This was "understood" by the insured "to comprise the only reports or method of reporting required by said Policy or any clause or provision thereof."

The agent wrote all the insurance carried by the insured and he was fully informed respecting the insured's property and insurance coverage at all times, except, of course, "the cash values of inventory for specific months as to which he made the aforesaid inquiries from time to time and was thereupon immediately advised of the exact value sought."

At no time prior to the fire "did Defendant, or said Agent, or any person whatever, notify, advise, instruct or complain to insured of any alleged failure to make reports in a form, manner or at times expected by and satisfactory to Defendant, or make protest or give caution with reference to any non-compliance" with the terms of the policy.

The procedure followed in reporting under the two policies of August 1, 1947, and August 1, 1948, was the same. Insurer's agent, Norfleet, handled the reporting under those policies in exactly the same manner that he had handled every one of the numerous similar policies issued by him for the insurer, during the twelve year period that he represented the insurer. "In every instance it has been the custom and practice for the agent to procure from the insured the necessary information as to monthly values of inventories *, * * and, as Defendant's agent, to prepare the reports mentioned in the 'Value Reporting' provisions of the respective policies involved and forward such reports to Defendant." "In such policies of insurer, issued through affiant (Norfleet), the respective insured parties did not, and do not now, make such reports directly to Defendant, but uniformly make the same to affiant, as Defendant's agent, when requested by affiant." The "Defendant recognizes and has always recognized this as an acceptable procedure, looking to the agent for such reports and providing blank forms whereon the agent may report on a single page names, locations, policy numbers and values pertaining to separate insured parties and policies."

"At no time has Defendant required that such reports be filed within thirty (30) days after the last day of each separate month; it is and has been the customary practice as to Defendant's value reporting policies of insurance written and delivered by affiant (Norfleet), to accumulate the information in the agent's office and then periodically forward to Defendant, at one time, reports covering several separate months, all under the same policy; Defendant has never protested this practice, but accepted reports so rendered; occasionally, after lapse of such reports as to a particular insured for several successive months, Defendant would send to affiant (Norfleet) a reminder of such delinquency on a printed postcard prepared and set-up for the particular purpose whereon blank spaces are provided in which Defendant writes, or causes to be written by hand, the name and address of insured, policy number and the number of months in which inventory values, as mentioned in the policy are unreported at the time. Defendant sends no notice of delinquent reports to the insured, either directly or through the agent. Usually Defendant urges promptness in forwarding such unreported months at the end of an insurance year under the policy involved where values in each of the preceding twelve months are necessary for computation of the final premium for such year."

· All the monthly value reports required under the insured's policies of August 1, 1947, and August 1, 1948, "were prepared and made as follows: Affiant (Norfleet) inquired of the insured from time to time as to the inventory value of certain designated months; written reports thereof were prepared by affiant; signed by affiant in the name of insured through one of its officers, or by affiant, and thereafter forwarded to Defendant; none of said reports were actually signed by an officer or agent of insured, such signatures being affixed by affiant by permission."

The reports under said policies were sent to the insurer, not within thirty days after the end of each month, but irregularly. The agent prepared reports for September, October and November, 1947, signed them in the name of the insured, and then sent them simultaneously to the insurer's home office. The reports for December, 1947, and January, February, March, April and May, 1948, were similarly prepared and signed by the agent, and were sent simultaneously by him after May. The reports for June and July, 1948, were similarly prepared and signed by the agent and then were forwarded together by him in September, 1948. "All of said reports were accepted by said defendant without protest, comment or criticism by or on the part of Defendant," and on the basis of such reports the pre-

mium due under said policy of August 1, 1947, was finally computed and adjusted on or about October 8, 1948.

The only report under the policy of August 1, 1948, received prior to the fire by insurer at its home office was the one made as of August 31, 1948, showing an inventory value of $12,539.54. It was prepared, signed and mailed by the agent in the same manner as the reports above mentioned. It was dated September 2, 1948, and was received in the insurer's home office on October 1, 1948. Reports for all other months were prepared, signed and mailed by the agent on March 31, 1949. The fair value of the inventory on the last day of January, 1949, was $16,591.40, on the last day of February, 1949, $24,015.90, and at the time of the fire on March 18, 1949, $22,677.06. Subsequent to said fire loss on March 18, 1949, insurer claimed, for the first time, that it had received no report since that covering the month of August, 1948. As stated in the opinion of the Court below, "the record does not affirmatively disclose whether the agent had obtained before the fire the information which he reported after the fire."

The insured complied with all the requirements of said policy respecting notice and proof of its said fire loss of $22,677.06 and demanded payment by the insurer of the sum of $20,000.00. This demand was refused, and moreover, no sum has ever been tendered by the insurer to the insured. Although in its answer and motion for summary judgment, the insurer took the position that "if it be liable for any amount" its liability cannot exceed $12,539.54, it now (as in the hearing before the District Court) admits liability for that amount.

The law of Virginia is here controlling. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. And the Virginia law, as declared by the highest court of the State, is favorable to insured, on the points of waiver and estoppel. Thus, in Virginia Fire & Marine Insurance Co. v. Richmond Mica Co., 102 Va. 429, 46 S.E. 463, the Supreme Court of Appeals of Virginia flatly refused to follow the decision of the United States Supreme Court (which was favorable to the insurer

and against the insured on waiver and estoppel) in Northern Assurance Co. v. Grand View Building Association, 183 U.S. 308, 22 S.Ct. 133, 46 L.Ed. 213. To us, the recent Virginia cases (both decided in 1948) of State Farm Fire Insurance Co. v. Rakes, 188 Va. 239, 49 S.E.2d 265, 4 A.L.R.2d 862, and Virginia Automobile Mutual Insurance Co. v. Brillhart, 187 Va. 336, 46 S.E.2d 377, seem to require that we affirm the instant decision of the District Court.

In the Rakes case, 188 Va. at pages 240 and 244, 49 S.E.2d at pages 266, 267, Mr. Justice Staples said:

"The question presented is a narrow one. The policy insured plaintiff's personal property and household goods while located in a certain building but not elsewhere. They were destroyed by fire while in plaintiff's home in another county to which they had been removed; therefore, the loss is clearly not within the protection afforded by the language of the policy. But the plaintiff claims that the defendant is estopped by the conduct of its agent to deny liability."

\*   \*   \*   \*   \*   \*

"Here the plaintiff expressly notified the agent that the property was being taken to his home in Dickenson County, and at the same time requested the agent to take such action as might be necessary to transfer the coverage to the new location. And the evidence was sufficient to permit a finding by the jury that the agent, Woodson, admitted that his failure to take such necessary action was due to his own negligence."

And the opinion concludes: "We think the defendant is estopped to interpose, as a defense to its liability, the failure of its agent to perform this duty."

In the Brillhart case, involving an automobile liability policy, where the insurer was held liable under the doctrine of waiver and estoppel, Mr. Justice Eggleston, 187 Va. at page 342, 46 S.E.2d at page 380, stated:

"There is no suggestion in either of these provisions that a change of ownership of the car worked a forfeiture of the policy. Their manifest purpose is to require the consent of the company in order to effect a transfer of coverage from the named 'insured' to another.

776

"The problem presented is one of *coverage* and not of *forfeiture*. The question is whether the coverage afforded by the policy to Huffman was extended or transferred to Owens. If Owens was covered or protected by the policy, then Brillhart was entitled to recover of the Insurance Company. On the other hand, if Owens was not so protected or covered, Brillhart's claim against the Insurance Company cannot be sustained." (The italics are those of the court.)

We are not impressed by the contentions of appellant here, that Mr. Justice Eggleston's statement as to "coverage" was pure dictum and that the opinion failed to mention and consider Va. Code, Section 38-62, which reads in part: "No agent, agency or company representative of any insurance company shall make any contract for insurance or surety or agreement as to such contract other than that which is plainly expressed in the contract issued."

Nor do we think this statute, justifies, in the instant case, a reversal of the judgment below. In the Peters case, supra, involving a question quite similar to the case before us, Circuit Judge Soper, 177 F.2d at page 779, said: "In the instant case the question is one of coverage."

■ We do not here hold that the mere failure of the insurer to notify the insured of its omission to make monthly reports, standing by itself, amounts to a waiver by the insurer of the provisions of the policy. Since the insured has the right, if it sees fit, to omit making a monthly report and thereby reduce its insurance, the insurer may well infer that the insured desires to limit its insurance to the amount shown by the insured's latest report, and, consequently, there is no duty on the insurer to jog the memory of the insured. Our conclusion of waiver and estoppel is based not merely on the acts of insurer's agent with respect to the monthly reports but also upon the approval of the agent's acts by the insurer, which is indicated by the evidence in this case. We are not holding that the insurer is liable merely because the agent of insurer represented to the insured that he (the agent) would take care of the monthly reports, but also because the insurer was aware of the agent's course of conduct and

approved of it. We have here a waiver based not entirely on the acts of the insurer's agent but a waiver by the insurer itself.

Appellant relies heavily upon Judge Soper's opinion in the Peters case, 4 Cir., 177 F.2d 773. That case can be distinguished from the instant case on two grounds: (1) in the Peters case there was a deliberate understatement made by the insured as to the value of the goods; in the instant case, insured made no such understatement; (2) under the applicable law of South Carolina, there could be no waiver of coverage; such a waiver, by the Virginia law, as shown in the Rakes and Brillhart cases, does exist. There is also force in the suggestions made in the brief of insured: "The factual differences in the Peters case and in the instant case are both substantial and obvious. In the Peters case all reports were made and filed by the insured on forms provided by the company containing plain instructions respecting the preparation thereof; and the values reported by the insured were deliberately understated, with a resultant decrease in the insured's premium liability. In the instant case all reports were made and filed by the agent, in a manner which the insured believed complied with the insurer's requirements; no report forms, nor contrary instructions of notice, was ever given to the insured; the reports were all made on the basis of actual inventory value; and there was, accordingly, no reduction in the amount of the insured's premium liability."

Finally, in this connection, the equities in the Peters case strongly favored the insurer; here, we think the equities are on the side of the insured, which apparently, in perfectly good faith, relied on, and acted in accordance with, the representations and assurances of Norfleet, insurer's agent.

We think it appropriate to point out that the Virginia Code, Section 38-64 also provides: "A person who is authorized by any company to solicit insurance or applications therefor shall in any controversy between the insured or his beneficiary and the company be held to be the agent of the company which issued the insurance solicited or so applied for, anything in the

application or policy to the contrary notwithstanding."

In the Brillhart case, 187 Va. at page 345, 46 S.E.2d at page 381, Justice Eggleston quoted with approval the following extract from Coles v. Jefferson Insurance Co., 41 W.Va. 261, 23 S.E. 732: " 'The insurance agent, within the general scope of the business he transacts, is pro hac vice the insurance company. What he knows they know. What he does, they do. He has power to bind and to loose, and no limitation on his power unknown to strangers will bind them.' "

Norfleet, here, was clearly the insurer's agent; his conduct was thus the insurer's, and the insurer is thereby bound. See, also, the cases of Aetna Insurance Co. v. Rhodes, 10 Cir., 170 F.2d 111; Home Insurance Co. of N. Y. v. Hightower, 5 Cir., 22 F.2d 882, certiorari denied 276 U.S. 634, 48 S.Ct. 339, 72 L.Ed. 743; Royal Indemnity Co. v. Hook, 155 Va. 956, 157 S.E. 414; Royal Insurance Co. v. Poole, 148 Va. 363, 138 S.E. 487.

We find no ground whatever for a reversal by virtue of the District Court's refusal to permit insurer to take further depositions. Certainly there was no abuse of the Court's discretion. In the opinion below, the District Judge said:

"Each side moved for summary judgment, the case was argued and submitted, the plaintiff prevailed, and the defendant now asks leave to take discovery depositions of its agent and another. The Court thinks the request cannot be allowed.

Defendant conceded at the argument, and now, that the record posed no genuine issue of fact. No hint of undevelopment in the evidence was previously made. For the first time, in its present request, the defendant suggests the possibility of the existence of material evidence not developed in the case. But the possibility was as well known before the submission as afterwards.

\* \* \* \* \* \*

"Reason for such discovery was as well known to the defendant prior to submission as now. Even now, however, the results of such an inquiry are conceded to be wholly speculative. Finally, the evidence actually shows the contrary of the defendant's position—it shows, in Boykin's affidavit, that the plaintiff always answered the agent's inquiries 'forthwith' and 'immediately.' "

And, see, Lewis v. Atlas Corporation, 3 Cir., 158 F.2d 599; Hartmann v. Time, D. C., 64 F.Supp. 671; Allen v. Radio Corporation of America, D.C., 47 F.Supp. 244.

The judgment of the District Court is affirmed.

Affirmed.