## UTICA MUTUAL INSURANCE COMPANY

v.

**Emerson Traual STEGALL, Benny R. Stegall, Sandra Gayle Stegall, Hartford Accident and Indemnity Company, and Canal Insurance Company.**

### Civ. A. No. 68-C-31-R.

United States District Court
W. D. Virginia,
Roanoke Division.

Oct. 23, 1968.

Clifton A. Woodrum, III, Dodson, Pence, Coulter, Viar & Young, Roanoke, Va., for Utica Mut. Ins. Co.

L. Dale McGhee, Philpott & McGhee, Bassett, Va., for the Stegalls.

Michael K. Smeltzer, Eggleston, Holton, Butler & Glenn, Roanoke, Va., for Hartford Acc. & Indem. Co.

G. Marshall Mundy, Woods, Rogers, Muse, Walker & Thornton, Roanoke, Va., for Canal Ins. Co.

## Opinion and Judgment

DALTON, Chief Judge.

This is a declaratory judgment action filed by Utica Mutual Insurance Company, hereinafter referred to as Utica, to determine whether Utica is liable on a policy of automobile liability insurance issued to Emerson T. Stegall for any claims which may arise out of an accident involving the insured automobile which occurred while Benny R. Stegall, the son of Emerson T. Stegall, was driving the insured automobile.

Utica is attempting to deny coverage of this accident on two grounds: (1) that the policy was void *ab initio* because Emerson made a material misrepresentation in his application for insurance and (2) that coverage under the liability policy should not be extended to cover Benny because he was not driving the insured automobile with the permission of Emerson as permission is defined in the omnibus clause of the policy.

On October 10, 1966, Emerson applied for insurance on his 1962 Pontiac through Mr. J. M. Wyatt, a Martinsville insurance broker for State Farm Mutual Automobile Insurance Company. Insurance with State Farm was unavailable so Mr. Wyatt forwarded an application to the Virginia assigned risk plan where the application was assigned to Utica. Utica issued an assigned risk policy to Emerson on the basis of this application. On November 11, 1966, Emerson applied for and obtained an endorsement to the Utica policy providing coverage for a second automobile, a 1960 Chevrolet, the automobile which was involved in the accident. No additional questions were asked or information requested before Utica issued the endorsement covering the second vehicle. Thus, the only statements that could bar liability as material misrepresentations, were those statements made by Emerson on the original application requesting insurance for the 1962 Pontiac.

This application contained the provision that the "APPLICANT CANNOT SECURE COVERAGE ON A VEHICLE UNLESS HE IS OR SOON WILL BE THE REGISTERED OWNER." Question eleven (11) in the application requested the applicant to list all operators of the insured vehicle who were residents of the applicant's household. In answer to question eleven (11) Emerson inserted his own name and the name of his wife.

The 1960 Chevrolet was in fact registered in Emerson's name. However, the automobile had been purchased and was owned by his son, Benny. Benny bought the car in July 1966, but since his driver's permit had been suspended in 1963 and would not be reissued until February 1967, Benny could not obtain insurance, so he had the car registered in his father's name and allowed his father and mother to drive it. Benny testified in depositions that he never drove the 1960 Chevrolet until his driver's permit was renewed in February 1967.

Benny was married on November 12, 1966, and moved out of his father's household to live in a trailer. Later, in February 1967, Benny, and his wife moved out of the trailer into the home of his wife's sister where they continued to live until the time of the accident. After the marriage in November, Benny's wife became the principal driver of the 1960 Chevrolet, and the car was usually garaged at Benny's residence. Emerson testified in depositions that he continued on occasion to drive Benny's car even after Benny's marriage. Benny testified that he can never remember his father's driving the car after February 1967. Benny's permit was renewed in February 1967, and he had the accident while driving the 1960 Chevrolet on March 18, 1967.

Virginia law is controlling in this case, and the Virginia law is clear that a misrepresentation made in an application for insurance will render any policy issued thereon void *ab initio* if such misrepresentation is material to the risk when assumed. State Farm Mut. Automobile Ins. Co. v. Butler, Adm'r., 203 Va. 575, 125 S.E.2d 823 (1962). The same rule of law is also applicable to policies issued under the Virginia assigned risk plan. Virginia Farm Bureau Mut. Ins. Co. v. Saccio, 204 Va. 769, 133 S.E.2d 268 (1963); but see Buckeye Union Cas. Co. v. Robertson, 206 Va. 863, 147 S.E.2d 94 (1966) (see Justice Carrico's concurring opinion, dissenting in part). Section 38.-1–366 of the Va.Code Ann. (1953 Replacement Vol.) expressly states that "no statement in such application [for a policy of insurance] * * * shall bar a recovery upon a policy of insurance, * * * unless it be clearly proved that such answer or statement was material to the risk when assumed and was untrue." Thus, Utica in order to bar recovery on its policy of insurance on the basis of statements made in the application for insurance must prove: (1) that Emerson made a misrepresentation in the application and (2) that the misrepresentation was material to the risk when assumed.

Utica alleges that Emerson misrepresented that he was the owner of the 1960 Chevrolet when in fact his son Benny was the true owner. Utica contends that Emerson listed himself as the owner; that he listed himself and his wife as the only principal drivers; and that this information misrepresented the true facts. Utica refers the court to the case of Scott v. State Farm Mut. Automobile Ins. Co., 202 Va. 579, 118 S.E.2d 519 (1961) wherein a father and son jointly purchased an automobile, the father applied for insurance stating in the application that he was the *sole* owner of the automobile, and insurance was issued on the basis of this application. The Virginia Supreme Court of Appeals held that the father's statement

that he was the sole owner constituted a misrepresentation, but that the insurer was, nevertheless, liable on the contract of insurance because it had not proved that the misrepresentation was material to the risk. Utica argues that the instant case involves the same type of misrepresentation as was involved in *Scott* and that Utica has proved that Emerson's misrepresentation was material to the risk.

The court would agree that a statement made by Emerson in his application for insurance that he was the sole owner of the 1960 Chevrolet would constitute a misrepresentation. However, the court cannot find any such statement in Emerson's application. Emerson fully answered all the questions in the application, but nowhere was there a question on that form requesting that the owner of the vehicle be listed. Question six (6) in bold face type states that the applicant is required to be or soon to become the registered owner, but the term registered owner is not synonymous with the term sole owner. Emerson made no representation on the insurance application that could reasonably be interpreted to imply that he was anything other than the registered owner. Emerson was indeed the registered owner of the 1960 Chevrolet, and the representation indicating such in the application was completely true.

Emerson also listed himself and his wife as the only operators resident in his household. This statement was true since Benny had no license to drive and did not operate the vehicle at the time the application was filed with Utica.

Utica argues that Emerson made incomplete representations to the Virginia Division of Motor Vehicles in his application for a certificate of title and failed to inform the Division that Benny was the true owner. The Va.Code Ann. § 46.1–52 (1967 Replacement Vol.) in subsection (a) provides: "Every application for a certificate of title shall contain a statement of the applicant's title and of all liens or encumbrances upon the vehicle and the names and addresses of

all persons having any interest therein and the nature of every such interest." Utica contends that it was entitled to rely on the assumption that the requirements of the Virginia Code had been met with regard to the titling and registration of the insured vehicle. This argument is unavailing in view of the provision of § 38.1–336 of the Va.Code Ann., heretofore set forth in this opinion, which provides that recovery will not .be barred by a statement in the application for insurance unless such statement is both false and material to the risk. The law is clear, and the court is unaware of any authority authorizing Utica to rely on representations made to a state agency when issuing an insurance policy. Emerson was legally the registered owner, and any statement to that effect in the insurance application was true, notwithstanding any representations made to the Virginia Division of Motor Vehicles when applying for a certificate of title.

Utica is not limited as to the questions it can ask an applicant for a policy of insurance. If Utica wants to know whether the registered owner is the same as the true owner, it should frame its questions so to elicit such information. Emerson answered all the questions on the insurance application truthfully, completely and in good faith. There was no legal obligation on Emerson to supply additional information without request. The only requirement is that an applicant make truthful representations. Utica could have, but did not, ask for any additional facts pertaining to ownership which it now alleges to have been material. Utica should not now be permitted to deny coverage because it failed to ask such questions.

Utica's second ground of defense on the policy is essentially as follows: The Utica policy included the provision commonly known as the omnibus clause which provides that liability coverage is automatically extended to cover anyone who drives the insured automobile with the permission and consent of the named insured. This permission or consent must come from someone who is in a position to give or grant it. In other words, the named insured must, as a general rule, own the insured vehicle or have such an interest in it that he is entitled to the possession and control of the vehicle and in a position to give such permission. Since Emerson did not own the insured automobile, he did not have the prerequisite possession and control of the vehicle necessary to give permission to drive it as contemplated by the terms of the omnibus clause.

In support of this argument, Utica refers the court to Nationwide Mut. Ins. Co. v. Cole, 203 Va. 337, 124 S.E.2d 203 (1962) and Virginia Auto. Mut. Ins. Co. v. Brillhart, 187 Va. 336, 46 S.E.2d 377 (1948). In Nationwide Mut. Ins. Co. v. Cole, supra, Harris, the true owner of the insured automobile, could not legally drive because his permit had been suspended, so he delivered possession of the car to his brother-in-law, Cole, who registered the vehicle in his own name and applied for and received a policy of liability insurance from the defendant insurance company. Subsequently, Harris was reissued his permit to drive, and Cole executed the prescribed papers transferring the title of the insured vehicle to Harris who then took possession of the vehicle. Shortly thereafter, Harris was involved in an accident while operating the insured automobile. The Virginia Supreme Court of Appeals held that once the named insured transferred the title and delivered possession of the insured automobile to Harris, its subsequent use and operation by Harris was not by virtue of the permission of the named insured, Clark, within the meaning of the omnibus clause and the liability could not be extended to cover Harris' use of the vehicle.

In the second case cited by Utica, Virginia Auto. Mut. Ins. Co. v. Brillhart, supra, the insured sold the insured vehicle to one Owens and transferred title and possession to him. The court in that case held that the insured's possession of the car and the right to control its use ceased and passed to Owens, and

that Owens was not covered under the omnibus coverage because the insured no longer had the right to give anyone permission to operate the insured automobile.

 These two cases are clearly distinguishable from the case at bar in that the insured in each of the two cases transferred the title to another individual before the accident occurred. But in the case at bar, Emerson still was the record owner and had not assigned the certificate of title to his son, Benny, when the accident occurred. Emerson's name was listed as the owner on the certificate of title, and he had an interest in the insured automobile. For example Emerson could have transferred title for value to a *bona fide* purchaser. Emerson retained such an interest in the automobile at the time of the accident as to be in a position to grant permission for its operation within the meaning of the omnibus clause. This result is clearly dictated by Virginia law as revealed by Scott v. State Farm Mut. Auto. Ins. Co., supra, some of the facts of which have been previously set forth. In *Scott* the son sold the insured vehicle to his friend, Herndon, received a ten ($10) dollar down payment and delivered possession to Herndon but never transferred the title of ownership. Thereafter, Herndon had an accident while operating the car. The defendant insurance company had issued a policy of insurance to the father of the owner, and the Virginia Supreme Court of Appeals held that such policy covered the accident of Herndon. The son, a part owner, for consideration, had sold the car and given up possession. However, the named insured had not assigned the certificate of title to Herndon, and thus retained sufficient control to grant permission within the meaning of the omnibus clause.

Therefore, for the reasons herein set forth and upon mature consideration of the facts in this case, the court does adjudge and order that the policy of liability insurance issued by Utica to Emerson T. Stegall was not void *ab initio* but was still effective on the date of Benny R. Stegall's accident and that the policy by virtue of the omnibus clause extended coverage to Benny R. Stegall while driving the insured automobile.